**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

HEATHER MERRILL,

<table>
<tr><td></td><td>Plaintiff,</td><td>3:19-cv-01240 (BKS/ML)</td></tr>
</table>

v.

CORRINE L. COPELAND,

<table>
<tr><td></td><td>Defendant.</td><td></td></tr>
</table>

---

**Appearances:**

*For Plaintiff:*
Michael H. Sussman
Sussman & Associates
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, NY 10924

*For Defendant:*
Meredith A. Moriarty
Smith Hoke, PLLC
16 Wade Road
Latham, NY 12110

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Heather Merrill brings this action against Defendant Corrine L. Copeland under

42 U.S.C. § 1983, alleging claims of false arrest and malicious prosecution in violation of her

Fourth Amendment rights. (Dkt. No. 1). Defendant moves to dismiss the Complaint for failure to

state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 8). The parties have filed

responsive briefing. (Dkt. Nos. 12, 13). For the reasons that follow, Defendant's motion is

denied.

II.    **FACTS**[1]

    A.    **Plaintiff's Sexual Assault**

Plaintiff Heather Merrill was a "long-time employee" of the Youth Leadership Academy (the "Facility")[2] in Delaware County, New York. (Dkt. No. 1, ¶ 4). Defendant Corrine L. Copeland was employed by the Office of Children and Family Services as a youth counselor. (*Id.* ¶ 2). Between 9:00 and 10:00 p.m. on October 17, 2017, J.C., a "minor resident" of the Facility sexually assaulted Plaintiff in a bathroom stall while a second minor resident, G.H., "served as a lookout." (*Id.* ¶¶ 4–5, 16(A)). J.C. and G.H. "had criminal records." (*Id.* ¶ 21). "During the sexual assault," Defendant, "then the Administrator-on-Duty at the facility" came into the "room associated with the bathroom stall" and opened the "stall where [P]laintiff was being sexually assaulted." (*Id.* ¶ 6). Plaintiff "pleaded with [Defendant] for assistance." (*Id.* ¶ 11). Rather than separating Plaintiff from J.C. and the G.H., Defendant, who "had a radio on her person and could have sought assistance . . . and maintained her position" near Plaintiff, "left [P]laintiff alone in the area with both minors." (*Id.* ¶¶ 12–13). "From the outset, [P]laintiff explained that she had been forced into the bathroom stall and sexually assaulted." (*Id.* ¶ 27).

    B.    **Defendant's False Statements in a Supporting Deposition**

Later that evening, Defendant "signed a Supporting Deposition" in which she "falsely reported" the following facts:

- When Defendant "opened the door of the stall where J.C. was sexually assaulting [Plaintiff] and asked what was happening, [P]laintiff responded, 'I was teaching him how to clean the toilet.'" (*Id.* ¶ 7).

---

[1] The facts are taken from the Complaint. (Dkt. No. 1). The Court will assume the truth of, and draw reasonable inferences from, those well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[2] While the Complaint provides little information regarding this entity, the Complaint refers to it as "the Facility," and the Court does so as well.

- Defendant falsely reported that J.C. "told [Defendant] that he 'finger popped'" Plaintiff "three times and stuck his dick in her two or three times" before Defendant "came into the stall." (*Id.* ¶ 8).

- That "J.[C.] advised [Defendant] that [Plaintiff] coerced him to have sex." (*Id.* ¶ 9).

Defendant also "falsely claimed that [P]laintiff had begged [Defendant] not to report the incident" and that Plaintiff "expressed concern that she would lose her job due to the incident."[3] (*Id.* ¶ 14). Defendant "never reported" Plaintiff's plea for assistance. (*Id.* ¶¶ 11, 16(D)).

According to the Complaint, Defendant claims that she was "so outraged" at Plaintiff that "this explains why she left" Plaintiff with J.C. and G.H., and that if she "had stayed in the room, she would have "punched [P]laintiff out." (*Id.* ¶¶ 17–18). Defendant further claims that she was "so angry" with Plaintiff that she "could not dial her phone properly" and alert the authorities to the incident. (*Id.* ¶ 19).

### C.    Defendant's False Statements to a Grand Jury

Defendant testified before a grand jury and "continued to lie about the incident." (*Id.* ¶ 15). Defendant told the following lies to the grand jury, (*id.* ¶ 16):

- That on October 17, 2017, Plaintiff "asked [Defendant] if [Plaintiff] could take J.C. to do his duties. (*Id.* ¶ 16(A)). In fact, Plaintiff "made no such request that evening and, instead," Defendant had "directed [Plaintiff] to take J.C. and . . . G.H. to a remote area to clean." (*Id.*).

- That Plaintiff "changed the way she wore her hair" and that Plaintiff's "behavior was changing over a period of a couple weeks before the incident." (*Id.* ¶ 16(B)).

---

[3] The Complaint does not state where this "false claim[]" was made. (Dkt. No. 1, ¶ 14).

In fact, Plaintiff "made no substantial or noticeable changes during these days or weeks to her appearance or in her deportment." (*Id.*).

- That Plaintiff "dyed her hair 'gang colors' the day before the incident." (*Id.* ¶ 16(G)).

- That when Defendant "observed feet in the bathroom stall," Plaintiff was "facing J.C." (*Id.* ¶ 16(C)). In fact, "J.C. was at the front of the stall, blocking [P]laintiff who was behind him in the stall." (*Id.*).

- That when Defendant "opened the stall," Plaintiff kept saying, "Copeland please don't say anything, please don't say anything." (*Id.* ¶ 16(D)). In fact, Plaintiff "made no such remark to [D]efendant and instead pleaded with Defendant for assistance." (*Id.*).

- That Plaintiff "did not ask [Defendant] for assistance or ask her to stay with her," (*id.* ¶ 16(E)), when in fact she pleaded with Defendant for assistance. (*Id.* ¶¶ 11, 16(D)).

- That Plaintiff and J.C. "had a relationship." (*Id.* ¶ 16(E)).

- That she and other staff at the Facility "didn't know she was sleeping with the kids," which falsely suggested that Plaintiff "had engaged in that activity." (*Id.* ¶ 16(F)).

- That J.C. and G.H. were "harmless." (*Id.* ¶16(H)), when in fact, both "were in the facility for acts of violence." (*Id.*).

The various false reports Defendant gave—and the ones she omitted—were intentional. (*Id.* ¶ 29). Defendant "acted out of animus" toward Plaintiff. (*Id.* ¶ 30).

### D.     Plaintiff's Arrest and Trial

Plaintiff was arrested and prosecuted on two felony counts of third-degree rape and endangering the welfare of a child, a misdemeanor. (*Id.* ¶¶ 20, 24). Following her arrest, Plaintiff was "transported to the county jail, arraigned, . . . and detained for hours before bail could be raised and posted." (*Id.*).

At Plaintiff's criminal trial, Defendant "was the only adult witness" to corroborate "the charges against Plaintiff." (*Id.* ¶ 23). On or about November 20, 2018, a jury acquitted Plaintiff on each count. (*Id.* ¶ 28). As a "direct consequence" of Defendant's "false allegations," Plaintiff was "terminated from her employment," losing salary and benefits. (*Id.* ¶ 25). Plaintiff "suffer[ed] substantial expenses for legal defense, was left emotionally distraught at the loss of her job," and further suffered embarrassment, humiliation, and emotional distress. (*Id.* ¶ 31).

## III.    LEGAL STANDARD

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   DISCUSSION

### A.   Grand Jury and Criminal Trial Testimony

Defendant argues that she has absolute immunity from liability for testimony given before the grand jury and at Plaintiff's criminal trial. (Dkt. No. 8-1, at 7–8). Plaintiff agrees and explains that her claims are not based on Defendant's grand jury or criminal trial testimony. Rather, her claims are premised on Defendant's "prior and independent conduct of falsifying her witness account when initially reporting . . . what she observed on October 17, 2017." (Dkt. No. 12, at 11). Thus, the Court does not address this argument further.

### B.   Color of State Law

Defendant moves to dismiss Plaintiff's claims on the ground that she has failed to allege that Defendant was acting under color of state law. (Dkt. No. 8-1, at 8–11). Defendant makes two principal arguments. First, she argues that Plaintiff's allegations of acting under color of state law are conclusory. (*Id.* at 10). Second, she argues that "witnessing an incident and reporting to law enforcement" was not done under color of state law "because it could have been done by any private citizen" and the fact that Defendant was "on-duty at the time that these actions occurred . . . does not determine whether she was acting under the color of state law." (*Id.*). Plaintiff responds that she has "plausibly allege[d] that [Defendant] misused her State position and role as [the Administrator-on-Duty]."[4] (Dkt. No. 12, at 14).

---

[4] Plaintiff also argues that Defendant was "a private party . . . jointly engaged with state officials in wrongfully procuring [Plaintiff's] arrest and prosecution." (Dkt. No. 12, at 14). The Court does not reach Plaintiff's second, alternative argument.

By its terms, section 1983 applies only where the defendant acts "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983; *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996) ("[A] plaintiff must allege a violation of rights secured by the Constitution or laws of the United States, and that such violation was committed by a person acting under the color of state law."). "[A] defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). By contrast, "acts of officers in the ambit of their personal pursuits are plainly excluded." *United States v. Giordano*, 442 F.3d 30, 42–43 (2d Cir. 2006) (Sotomayor, J.) (quoting *Screws v. United States,* 325 U.S. 91, 111 (1945) (plurality opinion)). "[T]here is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994). A defendant acts under color of state law for the purposes of § 1983 when she exercises a power "possessed by virtue of state law and made possible only because the wrongdoer is cloaked with the authority of state law." *Colombo v. O'Connell*, 310 F.3d 115, 118 (2d Cir. 2002) (quoting *Monsky*, 127 F.3d at 245). The "focus" of the color of law inquiry is on "whether there was an abuse or misuse of a power conferred upon [the state employee] by state authority," and "look[s] to the nature of the officer's act, not simply [her] duty status." *Pitchell*, 13 F.3d at 548–49

Here, the Complaint alleges that Defendant was employed by the state as a youth counselor through the Office of Children and Family Services, (Dkt. No. 1, ¶ 2), and that Defendant was the "Administrator-on-Duty" when she encountered Plaintiff and the two "minor resident[s]," J.C., and G.H., in the "bathroom stall at the facility." (*Id.* ¶¶ 4–5).[5]

---

[5] The Court declines to credit Plaintiff's allegation that Defendant at "all relevant times . . . was a state actor," (Dkt. No. 1, ¶ 2), because it is a legal conclusion. *See Iqbal*, 556 U.S. at 678; *see also James v. Bauet*, No. 09-cv-609, 2009

The fact that Defendant's conduct could, as she argues, have been "done by any private citizen" does not preclude a finding of state action. (*See* Dkt. No. 8-1, at 10). As the Second Circuit recently explained, "[i]f an individual is possessed of state authority and purports to act under that authority, h[er] action is state action. It is irrelevant that [s]he might have taken the same action had [s]he acted in a purely private capacity." *Defalco v. MTA Bus Co.*, 788 F. App'x 43, 45 (2d Cir. 2019) (quoting *West*, 487 U.S. at 56 n.15). In *Defalco*, the Circuit vacated a grant of summary judgment where, as here, "a state employee" defendant became involved in an investigation that arose "directly from his position" with the state. *Id.* The defendant in *Defalco* was alleged to have "knowingly made misrepresentations to MTA police" in an "eyewitness statement and written assertions" regarding his account of a theft of public property involving the plaintiffs. *Id.* at 44, 46. The Second Circuit held that the defendant acted under color of state law because he "undertook all relevant action as a means of carrying out the responsibilities of his official position." *Id.* at 45. Here, although the Complaint does not provide many details regarding the Facility or Defendant's duties there, drawing all reasonable inferences in Plaintiff's favor, as in *Defalco*, Defendant "undertook all relevant action as a means of carrying out the responsibilities of [her] official position," *id.* at 45, as the Administrator-on-Duty at the Facility. (Dkt. No. 1, ¶¶ 6–11).

Defendant relies on *Hoit v. Capital District Transportation Authority*, among other cases, for the proposition that being present and "on duty" are insufficient to establish that a state employee was acting under color of law. No. 15-cv-0134, 2016 WL 3947613, at *11, 2016 U.S. Dist. LEXIS 93576, at *35 (N.D.N.Y. July 19, 2016), *aff'd in part, vacated in part, remanded,*

---

WL 3817458, at *4, 2009 U.S. Dist. LEXIS 106463, at *12 (S.D.N.Y. Nov. 11, 2009) (explaining that a pro se plaintiff's allegation that the defendants acted "under color of state law," was insufficient to plead the color of law requirement under *Iqbal*).

805 F. App'x 41 (2d Cir. 2020). To be sure, alleging those facts, without more, would not satisfy § 1983's color of law requirement. *E.g.*, *Pitchell*, 13 F.3d at 548 ("More is required than a simple determination as to whether an officer was on or off duty when the challenged incident occurred."). Here, however, the Complaint includes allegations beyond the fact that Defendant was a state employee who was present and on duty. Plaintiff alleges that Defendant was the Administrator-on-Duty at the Facility, with supervisory authority, who witnessed a sexual assault on her watch, and falsely reported Plaintiff as the perpetrator. (Dkt. No. 1, ¶¶ 6–12, 16(A), 29). *Kern*, 93 F.3d at 43 ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." (quoting *West*, 487 U.S. at 50)). The alleged misuse of authority is particularly stark here because Defendant was the "only adult witness" to Plaintiff's sexual assault apart from Plaintiff herself. (*Id.* ¶ 21). *See Giordano*, 442 F.3d at 44 (explaining that the Circuit has "found that officials acted under color of law when their misuse of official power made the commission of a constitutional wrong possible"). The Court reasonably infers that "the air of official authority pervaded" Defendant's reports to law enforcement. *Id.* (quoting *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991)). Thus, Plaintiff has plausibly alleged Defendant was acting under color of state law.

### C.      False Arrest

"A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). To prevail on a Fourth Amendment false arrest claim, a plaintiff must establish that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (citing *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).

To establish the first element—that Defendant intended to confine Plaintiff—the defendant "must have either: (1) confined or intended to confine [the] plaintiff[], or (2) affirmatively procured or instigated the plaintiff's arrest." *King v. Crossland Sav. Bank*, 111 F.3d 251, 256 (2d Cir. 1997). However, "a civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest." *Du Chateau v. Metro-N. Commuter R. Co.*, 253 A.D.2d 128, 131 (1st Dep't 1999). On the other hand, "a complainant can be held liable for false arrest if the complainant 'intentionally provided false information' to instigate an arrest by law-enforcement officials, or had no reasonable basis for the report." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013) (quoting *Brown v. Nassau Cty.*, 306 A.D.2d 303, 303 (2d Dep't 2003)).

Defendant argues that Plaintiff cannot establish that she "affirmatively induced" officers to act. (Dkt. No. 8-1, at 15). Plaintiff responds that "knowingly and intentionally" providing "false and/or misleading information" to law enforcement is actionable for a false arrest claim.

Here, the Complaint plausibly alleges that Defendant's report to law enforcement went beyond simply furnishing information to law enforcement and, further, that Defendant had no reasonable basis for her report. Plaintiff alleges that, in the supporting deposition, Defendant attributed statements to Plaintiff and J.C. that were not made, (Dkt. No. 1, ¶¶ 7–9, 14), including fabricating the statement attributed to J.C. that Plaintiff "coerced him to have sex." (*Id.* ¶ 9). Defendant also "never reported" that when she opened the stall, Plaintiff "pleaded with her for assistance" but instead reported that when she opened the stall and "asked what was happening," Plaintiff responded, "I was teaching him how to clean the toilet." (*Id.* ¶¶ 7, 11). That Defendant

acted intentionally finds further support in Plaintiff's allegations that she omitted reporting Plaintiff's plea for help, continued to lie before the grand jury, and that she "acted out of animus" toward Plaintiff. (*Id.* ¶¶ 11, 16, 23, 29–30). Drawing all reasonable inferences in Plaintiff's favor, she has plausibly alleged that these statements were made intentionally and with no reasonable basis to instigate the arrest. *See Biswas*, 973 F. Supp. 2d at 519. Accordingly, Defendant's motion to dismiss Plaintiff's false arrest claim is denied.

### D.   Malicious Prosecution

A § 1983 claim for malicious prosecution has four elements: "(1) the initiation or continuation of a criminal proceeding; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation" for the defendant's actions. *Laureano v. United States*, No. 19-cv-10986, 2020 WL 1847739, at *2, 2020 U.S. Dist. LEXIS 64635, at *3 (S.D.N.Y. April 10, 2020) (citing *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). In addition, under § 1983, a plaintiff must allege "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights," *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000), and that "the underlying criminal proceeding ended in a manner that affirmatively indicates h[er] innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018). "[A] state's tort law serves . . . as a source of persuasive authority" in defining the elements of a § 1983 malicious prosecution claim. *Lanning*, 908 F.3d at 25.

### 1.   Initiating Plaintiff's Prosecution

Defendant moves to dismiss Plaintiff's malicious prosecution claims on the ground that Plaintiff has not plausibly alleged that Defendant initiated Plaintiff's prosecution. Plaintiff argues that "knowingly and intentionally" providing "false and/or misleading information" to law

enforcement to procure an arrest or prosecution "satisfies the 'initiation' prong" of a malicious

prosecution claim. (Dkt. No. 12, at 16).

"Initiation" in the context of a malicious prosecution claim "is a term of art." *Rohman*,

215 F.3d at 217. The "mere reporting of a crime to police and giving testimony are insufficient;

it must be shown that defendant played an active role in the prosecution, such as giving advice

and encouragement or importuning the authorities to act." *Id.* (quoting *DeFilippo v. Cty. of

Nassau*, 183 A.D.2d 695, 696 (2d Dep't 1992)). "Giving information to the police that is known

to be false qualifies as the commencement of a prosecution." *Rivers v. Towers, Perrin, Forster &*

*Crosby Inc.*, No. 07–cv–5441, 2009 WL 817852, at *3, 2009 U.S. Dist. LEXIS 26301, at *7

(E.D.N.Y. March 27, 2009); *see also Wong v. Yoo*, 649 F. Supp. 2d 34, 65 (E.D.N.Y. 2009)

("[W]here a party is responsible for providing false information or manufactured evidence that

influences a decision whether to prosecute, he may be held liable for malicious prosecution."

(quoting *Chimurenga v. City of New York,* 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999))).

Here, for many of the reasons discussed above with respect to Plaintiff's false arrest

claim, Plaintiff has plausibly alleged that Defendant made statements she knew to be false in the

supporting deposition she signed. (Dkt. No. 1, ¶¶ 7–11, 14). This included statements that

Defendant fabricated and attributed to Plaintiff and J.C. (*Id.* ¶¶ 8–10, 14). *See Wong*, 649 F.

Supp. 2d at 65 (denying summary judgment on malicious prosecution claim to non-law

enforcement defendant who "deliberately made false statements to the police regarding the

events" at issue). These statements went beyond "the mere reporting of a crime." *Rohman*, 215

F.3d at 217; *TADCO Const. Corp. v. Dormitory Auth. of State of N.Y.*, 700 F. Supp. 2d 253, 270

(E.D.N.Y. 2010) (concluding that the plaintiff had "adequately alleg[ed] the commencement of a

criminal proceeding" where the defendant "falsely told police that [the plaintiff] was trespassing,

when in fact he was authorized to be at the job site"). Thus, Defendant's motion to dismiss Plaintiff's malicious prosecution claim on this basis is denied.

### 2.      Actual Malice

Defendant argues that Plaintiff has not alleged malice, as required to plead a malicious prosecution claim, because "she does not allege" that Defendant "willfully made statements in bad faith, except a naked assertion" that Defendant "acted intentionally and with animus." (Dkt. No. 8-1, at 18; *see also* Dkt. No. 13, at 9–11). Plaintiff responds that the Complaint alleges Defendant's "false report to police" was "an out-an-out lie" and that "such a lie, when knowingly told to procure someone's arrest and prosecution" demonstrates bad faith. (Dkt. No. 12, at 18).

"Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502–03 (1978)); *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) ("The element of malice implicates an evil or unlawful purpose.").

Here, drawing all reasonable inferences in Plaintiff's favor, she plausibly alleges that Defendant acted with a motive "other than a desire to see the ends of justice served." *Lowth*, 82 F.3d at 573 (quoting *Nardelli*, 44 N.Y.2d at 502–03). In addition to Plaintiff's allegation that Defendant acted out of animus toward Plaintiff, (Dkt. No. 1, ¶ 30), the Complaint alleges that Defendant made various false reports in her supporting deposition and did not report that Plaintiff had pleaded with her to help. (*Id.*  ¶¶ 7–11). *Allen v. City of New York*, 480 F. Supp. 2d

13

689, 717 (S.D.N.Y. 2007) ("Knowingly filing a false report is strong evidence of malicious

intent."). Thus, Defendant's motion to dismiss on this basis is denied.[6]

### E. Causation

Defendant argues that Plaintiff has failed to plead both "but for" and proximate causation,

as required under § 1983. (Dkt. No. 8-1, at 18–19). Plaintiff responds that she alleges that had

Defendant "told the truth, her account *would not have matched*" the accounts J.C. and G.H.

provided and that it was therefore foreseeable that her false reports could result in Plaintiff's

"arrest and prosecution." (Dkt. No. 12, at 19). In her reply brief, Defendant further argues that

"Plaintiff's conclusory statement that the minors were 'inherently unreliable'" is insufficient to

establish causation because "no authority" "supports the proposition" that witnesses with

criminal records cannot be used to establish probable cause. (Dkt. No. 8-1, at 19; *see also* Dkt.

No. 13, at 11).

Under § 1983, a plaintiff must show that the defendant's misconduct was both the "but

for" cause and the proximate cause of the plaintiff's injury. *Arnold v. Geary*, 981 F. Supp. 2d

266, 269 (S.D.N.Y. 2013), *aff'd*, 582 F. App'x 42, 43 (2d Cir. 2014). "Proximate cause is

defined as a cause 'which in a natural sequence, unbroken by any new cause, produces that event

and without which that event would not have occurred.'" *Sanchez v. Bellefeuille*, 855 F. Supp.

---

[6] Defendant also argues that "as a mandatory reporter," who could be "guilty of a misdemeanor" for failing to report suspected child abuse, she is "immune from liability for such reports as long as she did not engage in willful misconduct or negligence." (Dkt. No. 8-1, at 17–18). In support of this argument, Defendant's counsel submitted a declaration. (Dkt. No. 8-2). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). The Court may consider "material outside the complaint" where it is attached to the complaint, incorporated by reference, or where the complaint "relies heavily" on the outside material's "terms and effect." *Chambers v. Time Warner*, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002). The declaration meets none of these criteria, and the Court declines to treat this motion "as one for summary judgment." *Faulkner*, 463 F.3d at 134; Fed. R. Civ. P. 12(d). Accordingly, the Court declines to consider the declaration in deciding the instant motion and does not further address Defendant's argument, which is based on factual averments external to the complaint. *E.g.*, *United States v. Nassar*, No. 13-cv-8174, 2014 WL 5822677, at *3, 2014 U.S. Dist. LEXIS 158520, at *8 (S.D.N.Y. Nov. 10, 2014) (declining to consider "declarations submitted by the [d]efendant" on a motion to dismiss).

587, 595 (N.D.N.Y. 1994) (quoting *Caraballo v. United States*, 830 F.2d 19, 22 (2d Cir. 1987)).

"Proximate cause is usually a factual question for the jury because the question of foreseeability

is subject to differing views." *Noga v. City of Schenectady Police Officers*, 169 F. Supp. 2d 83,

89 (N.D.N.Y. 2001). "'But for' cause" asks whether the harm alleged would "have happened but

for the" act at issue. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 161 (S.D.N.Y.

2009).

Plaintiff has plausibly alleged that Defendant's false reports were both a but for and

proximate cause of her arrest and prosecution. Drawing all inferences in Plaintiff's favor,

Plaintiff may not have been arrested had Defendant truthfully reported what she witnessed,

which would have contradicted J.C. and G.H.'s accounts and may have corroborated Plaintiff's

account that J.C. sexually assaulted her. (*E.g.*, Dkt. No. 1, ¶¶ 6–9, 27). Moreover, the Complaint

alleges that Defendant was the Administrator-on-Duty, suggesting that Defendant had

supervisory authority at the Facility, which in addition to contradicting J.C. and G.H., would

have lent credibility to Plaintiff's account of the incident. (*Id.* ¶¶ 6, 16(A), 27). Thus, at this

stage, Plaintiff has plausibly alleged that Defendant's false reports were both a "but for" and

proximate cause of Plaintiff's arrest and prosecution.[7]

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 8) is **DENIED**.

---

[7] In her response, Plaintiff argues that "if the Court were to conclude that there is no set of facts under which [Defendant] could be found to have acted under color [of] state law when she falsely and maliciously procured [Plaintiff's] arrest and prosecution, that the Court should read" the complaint as "also asserting her malicious prosecution claim under New York state law." (Dkt. No. 12, at 15). Defendant views this argument as a request to amend the Complaint. (Dkt. No. 13, at 11–13). As the Court concludes that Plaintiff's federal malicious prosecution claim withstands Defendant's motion to dismiss, the Court does not consider these issues.

**IT IS SO ORDERED.**

Dated: June 30, 2020
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge